James GIBSON, Mark Lamar, and John Doe, on their own and on behalf of a class of those similarly situated, Appellants–Plaintiffs/Cross–Appellees,

v.

INDIANA DEPARTMENT OF CORRECTION, Prosecutors of Allen, Marion and Vanderburgh Counties, Allen County Sheriff's Department, and Vanderburgh County Sheriff's Department, Appellees–Defendants/Cross–Appellants.

No. 49A04–0803–CV–165.

Court of Appeals of Indiana.

Dec. 29, 2008.

Transfer Denied April 9, 2009.

Kenneth J. Falk, Gavin M. Rose, ACLU of Indiana, Indianapolis, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees Indiana Department of Correction and Prosecutors of Allen, Marion and Vanderburgh Counties.

Keith W. Vonderahe, Jean M. Blanton, Ziemer, Stayman, Weitzel & Shoulders, LLP, Evansville, IN, Attorneys for Appellee Vanderburgh County Sheriff's Department.

John O. Feighner, Aaron J. Butler, Haller & Colvin, P.C., Fort Wayne, IN, Attorneys for Appellee Allen County Sheriff's Department.

## OPINION

CRONE, Judge.

### Case Summary

Effective July 1, 2007, the Indiana statutes providing for a sex offender registry

were amended to create a sex *and violent* offender registry ("Registry"). Ind.Code § 36-2-13-5.5 (amended by P.L. 216-2007, § 52). Thus, one who is convicted of murder,[1] voluntary manslaughter,[2] attempted murder, or attempted voluntary manslaughter who fails to register required information with local law enforcement authority in the county where he/she resides, works, and/or is enrolled in school, commits a felony. Ind.Code §§ 11-8-8-7, -17. In the fall 2007, James Gibson and other former violent offenders ("Appellants") filed a complaint asserting that their inclusion on the Registry and the imposition of the various registration requirements violate the Indiana Constitution, specifically Sections 23 and 12 of Article 1. The complaint was filed against the Indiana Department of Correction and various county sheriff's departments and prosecutors ("Appellees").[3]

Following a hearing, the Marion Superior Court, on March 13, 2008, issued findings of fact, conclusions of law, and entry of preliminary injunction regarding the enforcement of lifetime registration by violent offenders. Appellants, now certified as a class,[4] appeal the denial of the preliminary injunction with respect to the ten-year registration requirement for violent offenders. Appellees, also having received class certification,[5] cross-appeal the portion of the preliminary injunction that bars lifetime registration by certain violent offenders.[6] We affirm in part and reverse in part with instructions.

### Issues

In resolving this case, we must address the following issues:

I. Whether the imposition of the Registry's requirements on persons convicted of murder, voluntary manslaughter, attempted murder, and attempted manslaughter violates Article 1, Section 23 of the Indiana Constitution;

II. Whether the imposition of the Registry's requirements on persons convicted of murder, voluntary manslaughter, attempted murder, and attempted manslaughter violates Article 1, Section 12 of the Indiana Constitution;

III. Whether the Appellants demonstrated either irreparable harm or that the balance of harms and public interest favors a preliminary injunction; and

IV. Whether the trial court erred in entering a preliminary injunction

---

1. Ind.Code § 35-42-1-1.

2. Ind.Code § 35-42-1-3.

3. We will refer to specific individual Appellants and Appellees when it is relevant.

4. The class certified was comprised of "all Indiana residents who have been, or will be, convicted of the offenses of murder or manslaughter or attempted murder or manslaughter," with a subclass for those violent offenders more than ten years removed from their release and who do not fall within Indiana Code Section 11-8-8-19(b), -(c), or -(e). App. at 104-05.

5. Two classes of defendants were certified. The first class, the sheriffs of Marion, Allen and Vanderburgh Counties, represents "all local law enforcement authorities in Indiana as defined by Ind.Code § 11-8-8-2." App. at 105. The second class, prosecutors of Marion, Allen and Vanderburgh Counties, represents "all county prosecutors in the State of Indiana." *Id.*

6. We heard oral argument in this case on October 21, 2008, at Taylor University. We commend counsel on the quality of their oral and written advocacy. In addition, we thank the faculty, staff, and students for their hospitality.

limiting the Registry requirements to ten years rather than lifetime.

**Facts and Procedural History**

Pursuant to recently amended statute, a person who has committed murder, or voluntary manslaughter, or who has attempted or conspired to commit these crimes, must comply with the Registry's requirements. *See* Ind.Code § 11–8–8–5 (defining sex or violent offender, as amended by P.L. 216–2007, § 13). The Legislature has set out the duration of the duty to register below:

(a) Except as provided in subsections (b) through (e), a sex or violent offender is required to register under this chapter until the expiration of ten (10) years after the date the sex or violent offender:

(1) is released from a penal facility (as defined in IC 35–41–1–21) or a secure juvenile detention facility of a state or another jurisdiction;

(2) is placed in a community transition program;

(3) is placed in a community corrections program;

(4) is placed on parole; or

(5) is placed on probation;

whichever occurs last. The department shall ensure that an offender who is no longer required to register as a sex or violent offender is notified that the obligation to register has expired . . . .

(b) A sex or violent offender who is a sexually violent predator is required to register for life.

(c) A sex or violent offender who is convicted of at least one (1) offense under section 5(a) of this chapter that the sex or violent offender committed:

(1) when the person was at least eighteen (18) years of age; and

(2) against a victim who was less than twelve (12) years of age at the time of the crime;

is required to register for life.

(d) A sex or violent offender who is convicted of at least one (1) offense under section 5(a) of this chapter in which the sex offender:

(1) proximately caused serious bodily injury or death to the victim;

(2) used force or the threat of force against the victim or a member of the victim's family, unless the offense is sexual battery as a Class D felony; or

(3) rendered the victim unconscious or otherwise incapable of giving voluntary consent;

is required to register for life.

(e) A sex or violent offender who is convicted of at least two (2) unrelated offenses under section 5(a) of this chapter is required to register for life.

Ind.Code § 11–8–8–19.

Thus, in the counties where they reside, work, and/or are enrolled in school, such violent offenders must provide information including their full name, alias, date of birth, gender, race, height, weight, hair color, eye color, distinguishing features, social security and driver's license numbers, vehicle description and license plate number, address, a description of the offense, and a recent photograph. Ind.Code § 11–8–8–8. Registration must be updated annually and in person. Ind.Code § 11–8–8–14. In addition, throughout the year, offenders must make timely notification of any changes in residence, work, or schooling. Ind.Code § 11–8–8–11. Violation of the Registry requirements may constitute a class D felony or a class C felony, depending on the specifics of the violation. Ind.Code § 11–8–8–17.

The resulting Registry is to be maintained by the Indiana Department of Cor-

rection, with a related, though less comprehensive, website[7] established and maintained by Indiana sheriffs. Ind.Code §§ 11–8–2–12.4, –13; Ind.Code § 36–2–13–5.5. Law enforcement must make yearly visits to offenders to verify addresses. Ind.Code § 11–8–8–13. The legislative goal of the Registry is to "inform the general public about the identity, location, and appearance of every sex or violent offender residing within Indiana." Ind. Code § 36–2–13–5.5.

Appellant James Gibson was convicted of murder in 1985 in Marion County, received a fifty-year prison sentence, and was released from prison in April 2007. App. at 63. Gibson, although he has secured housing and employment and has complied with the Registry's requirements, asserts that the Registry and its requirements (lifetime registration as a violent offender) will make it difficult for him to find future jobs and housing. *Id.* There is no indication that he has been convicted of any other offenses listed under Indiana Code Section 11–8–8–5(a) or that he is a sexually violent predator. However, his victim was a two-year-old child. *Gibson v. State,* 515 N.E.2d 492 (Ind.1987).

Appellant Mark Lamar was convicted of attempted murder in 1986 in Vanderburgh County, received a prison sentence, and was released from probation in 1998. App. at 66; *Lamar v. State,* 514 N.E.2d 1269 (Ind.1987) (noting victim and Lamar had been friends for sixteen years, thus victim was not under twelve). In 2000, Lamar was sentenced to prison for driving while intoxicated, which is not an offense listed under Indiana Code Section 11–8–8–5(a). App. at 66. Released in 2003 and with no subsequent charges, Lamar currently works part time and cares for his mother. *Id.* Although he will comply with the Registry, Lamar, now in his fifties, strongly disagrees with it and maintains that it will burden his life. *Id.* There is no indication that he is a sexually violent predator.

Appellant John Doe was convicted of murdering an adult in 1989 after being waived into adult court. *Id.* at 53. Since his release from parole a few years ago, Doe has become employed as a paralegal at a firm in an Indiana city and has become actively involved in his community.[8] *Id.* Fearing loss of his job and way of life, Doe is anonymously challenging the Registry and its lifetime requirements as they apply to him due to his one conviction. *Id.* at 53, 69. He has never been classified as a sexually violent predator, nor is there any indication that he has any other convictions. *Id.* at 69.

Iris Wade was convicted of murder in January 1978. *Id.* at 72; *Wade v. State,* 271 Ind. 282, 392 N.E.2d 456 (1979). Her victim was over the age of twenty-one. App. at 72. After serving seven years in prison, she was released in 1986 and placed on one year of probation. *Id.* Thereafter, Wade attended college, operated a daycare center, and worked as an assistant teacher for the Head Start program. *Id.* at 73. Now in her seventies and retired, Wade was told to register and has done so. *Id.* She has never been found to be a sexually violent predator, nor have any other felony charges been filed against her. *Id.* at 72. More than ten years have elapsed since her release from probation. *Id.* Thus, if the trial court's

---

7. *See* Indiana Sheriff's Sex and Violent Offender Registry, at http://www.insor.org/insasoweb/ (last visited Nov. 19, 2008).

8. Doe's affidavit and the briefs submitted in the present appeal offer more details regarding Doe and his circumstances. However, consistent with the goal of preserving Doe's anonymity, we choose to provide a more general recitation of the facts in his case.

preliminary injunction is upheld, she will no longer be required to comply with the Registry's requirements.[9]

On August 20, 2007, Gibson filed a Class Action Complaint for Declaratory and Injunctive Relief/Challenge to the Constitutionality of Indiana Statute. *Id.* at 31–38. The other plaintiffs were added via amended complaints. On September 13, 2007, Judge Robyn Moberly was appointed special judge. On October 4, 2007, a motion to dismiss was filed. On November 26, 2007, Appellants filed a motion for preliminary injunction with supporting affidavits. *Id.* at 59–87. Appellees filed a response in opposition to the Appellants' motion. In December 2007, the court held a hearing regarding the motion to dismiss and the motion for preliminary injunction. In January 2008, the court denied the motion to dismiss the amended complaint.

In its order setting out Findings of Facts, Conclusions of Law and Entry of Preliminary Injunction, dated March 13, 2008, the court granted in part and denied in part Appellants' motion for preliminary injunction. Specifically,

> The Court enjoins [Appellees] from using Ind.Code § 11–8–8–19(d) to require lifetime registration for violent offenders. The Court further enjoins [Appellees] from requiring lifetime registration

for any violent offender, pending further order of the Court.

> Finally, the Court finds that [Appellants] have failed to carry their burden of proof that the registration requirements for violent offenders for ten (10) years post-penal supervision as contained in Ind.Code §§ 11–8–8 *et. seq.* violates Article 1 Section 12 or Article 1 Section 23 of the Indiana Constitution and, therefore, the Court denies the Motion for Preliminary Injunction as it pertains to the ten (10) year registration requirement for violent offenders.

*Id.* at 29.

## Discussion and Decision

 Preliminary injunctions are generally used to preserve the status quo as it existed before a controversy, pending a full determination on the merits of the controversy. *Thornton–Tomasetti Eng'rs v. Indianapolis–Marion County Pub. Library*, 851 N.E.2d 1269, 1277 (Ind.Ct.App.2006).

To obtain a preliminary injunction, the moving party must demonstrate by a preponderance of the evidence that: (1) its remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) threatened injury

---

**9.** It is unclear whether Wade's name and information would be *removed* from the Registry if the injunction is upheld. As recently observed by another panel of this court, "[n]otably absent from the statutes governing the Registry is a provision that permits an offender to remove his information from the Registry after he is no longer required to register[.]" *Doe v. Town of Plainfield, Ind.*, 893 N.E.2d 1124, 1128 & n. 4 (Ind.Ct.App.2008) (also noting that the parties in that case agreed that removal will occur if the offender dies or has his conviction vacated), *trans. pending; cf. Williams v. State*, 895 N.E.2d 377, 388 (Ind.Ct.App.2008) (in reference to sexually violent predators, "Indiana Code

subsection 35–38–1–7.5(g) provides the mechanism for making a determination that a person is no longer a sexually violent predator, which can occur as little as ten years after the original finding. Obviously, if a court finds that a person is no longer a sexually violent predator, then the statute that requires sexually violent predators to register for life would no longer apply."); *see also B.J.B. v. State*, 805 N.E.2d 870, 876 (Ind.Ct.App.2004) (holding that evidence did not support finding that juvenile was likely to commit another sex offense, and thus juvenile could not be placed on Registry). However, the removal question is not squarely before us, thus we do not resolve it.

to the movant outweighs the potential harm to the nonmoving party resulting from the granting of an injunction; and (4) the public interest would not be disserved. If the movant fails to prove any of these requirements, the trial court should deny a request for a preliminary injunction. The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor.

The trial court is required to issue special findings of fact and conclusions of law when determining whether to grant a preliminary injunction. We therefore must determine whether the evidence supports the trial court's findings, and whether the findings support the judgment. Thus, we will determine whether the special findings of fact validly support the trial court's decision to issue the injunction, and whether the findings are supported by evidence of probative value.

*Id.* (citations omitted).

 The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Cent. Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723,

727 (Ind.2008). An abuse of discretion occurs when a trial court reaches a conclusion that is against logic and the natural inferences that can be drawn from the facts and circumstances before the trial court. *R.R. Donnelley & Sons Co. v. N. Tex. Steel Co.*, 752 N.E.2d 112, 133 (Ind.Ct. App.2001). An abuse of discretion also occurs when the trial court misinterprets the law. *Ind. High Sch. Athletic Ass'n v. Durham*, 748 N.E.2d 404, 412 (Ind.Ct.App. 2001).

## I. Article 1, Section 23

According to Appellants, the Registry requires registration by persons convicted of certain, but not all, crimes that result in death. Similarly, the Registry requires registration of persons convicted of certain, but not all, attempt crimes involving serious criminal intent. Appellants contend that these legislatively created classifications are not reasonably related to any inherent characteristics between those in the different classifications. Appellants further argue that the classifications dispense preferential treatment that is neither uniformly applicable nor equally available to similarly situated persons. In short, they claim that the newly amended Registry violates the Privileges and Immunities clause in Article 1, Section 23 of our state's constitution.[10] We disagree.

---

**10.** Incidentally, the recent amendments to the Registry statutes have triggered many challenges, several of which allege ex post facto issues, and some of which await supreme court direction. *See, e.g., Wallace v. State*, 878 N.E.2d 1269, 1274 (Ind.Ct.App.2008) (concluding that statute governing sex offender registration requirements was not impermissible ex post facto law), *trans. granted; Douglas v. State*, 878 N.E.2d 873 (Ind.Ct.App. 2007) (holding that amendment to Registry statute was not ex post facto law as applied to sex offender), *trans. not sought; Thompson v. State*, 875 N.E.2d 403 (Ind.Ct.App.2007) (relying on ex post facto considerations in reversing sexually violent predator determination

insofar as it requires defendant to register for life), *trans. denied; Jensen v. State*, 878 N.E.2d 400 (Ind.Ct.App.2007) (2–1 decision holding that "imposition of a lifetime registration requirement in Jensen's case violates ex post facto considerations"; reversing determination that defendant is a sexually violent predator; and instructing trial court to enter order determining Jensen's registration requirement to be for ten years' duration), *trans. granted.*

Interestingly, our supreme court recently cited *Thompson*, 875 N.E.2d at 409, favorably. *See Jones v. State*, 885 N.E.2d 1286, 1289 & n. 3 (Ind.2008) (holding that sexually violent predator determination must occur at

 "In considering a constitutional challenge to a statute, we presume that the statute is valid and place a heavy burden on the challenger, who must clearly overcome that presumption." *Manigault v. State,* 881 N.E.2d 679, 687 (Ind.Ct.App. 2008) (citing *W.C.B. v. State,* 855 N.E.2d 1057, 1059 (Ind.Ct.App.2006), *trans. denied* ). "All reasonable doubts must be resolved in favor of the statute's constitutionality." *Id.* We review the constitutionality of statutes with the understanding that our General Assembly has wide latitude in determining public policy. *Boehm v. Town of St. John,* 675 N.E.2d 318, 321 (Ind.1996). We do not substitute our beliefs as to the wisdom of a particular statute for those of the Legislature, a more politically responsive branch of government. *See King v. S.B.,* 837 N.E.2d 965, 971 (Ind.2005). As such, "[a] statute is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies." *State v. Rendleman,* 603 N.E.2d 1333, 1334 (Ind. 1992).

 Article 1, Section 23 states, "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which upon the same terms, shall not equally belong to all citizens." The purpose of the equal privileges and immunities clause is to prevent the distribution of extraordinary benefits or burdens to any group. *State v. Price,* 724 N.E.2d 670, 675 (Ind.Ct.App.2000), *trans. denied.* This provision imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of people: (1) the disparate treatment accorded by the legislation must be reasonably related to the inherent characteristics that distinguish the unequally treated classes; and (2) the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Teer v. State,* 738 N.E.2d 283, 288 (Ind.Ct.App.2000), *trans. denied; see also Collins v. Day,* 644 N.E.2d 72, 78–79 (Ind.1994) (citing long list of cases that summarize the first prong as a requirement that legislative classifications be "just," "natural," "reasonable," "not arbitrary"). In determining whether a statute complies with Article 1, Section 23, "courts must exercise substantial deference to leg-

sentencing, and noting that lifetime registration resulting from a sexually violent predator determination most assuredly has penal implications and runs afoul of ex post facto considerations). Yet, even more recently, a panel of this court concluded that *Thompson* was "wrongly decided" because the change from indefinite registration to lifetime registration for sexually violent predators actually occurred in 2003, via Public Law 222–2003, § 1, which was well before both Thompson's 2005 offense and 2006 sentencing. *Williams,* 895 N.E.2d at 387–89 (comparing Ind.Code § 5–2–12–13 (2002) ("indefinite period") with Ind.Code § 5–2–12–13 (2004) ("for life")).

The Registry's computer provision was examined this year as well. *See Doe v. Prosecutor, Marion County, Ind.,* 566 F.Supp.2d 862, 865–66 (S.D.Ind.2008) (granting declaratory judgment stating that consent-to-search personal computer requirements in Ind.Code § 11–8–8–8(b) may not be applied to class of

"all persons, current and future, who are required to register as sex or violent offenders pursuant to Indiana law and who are not currently on parole or probation or court supervision;" explaining that the "unprecedented new law, however well intentioned it may be, violates the Fourth Amendment rights of the plaintiff class, who have completed their sentences and are no longer on probation, parole, or any other kind of court supervision."). The Registry was discussed in a recent case wherein we held that the sex offender *residency* statute, as applied to a particular defendant, violated the ex post facto prohibition of our state's constitution. *See State v. Pollard,* 886 N.E.2d 69 (Ind.Ct.App. 2008). Of note, as of September 12, 2008, *Pollard* was transmitted on transfer, and notice of defendant's death was filed. In any event, we limit our review to the particular issues presented.

islative discretion." *Collins,* 644 N.E.2d at 80. The challenger carries the burden "to negative every reasonable basis for the classification." *Id.*

The trial court found that the challenged statutes establish a class of persons who must register as violent offenders: murderers, attempted murderers, persons who have committed voluntary manslaughter, and persons who have committed attempted voluntary manslaughter. App. at 27 (Conclusion 79). As for the first prong of the Privileges and Immunities test, the court stressed legislative deference in policy matters and found:

> With regard to the classification of persons convicted of murder, attempted murder, manslaughter or attempted manslaughter as persons who must register, *it is apparent that these are persons who have demonstrated intentional violent deadly behavior towards another person.* Since the Constitutional requirement is that the disparate treatment be reasonably related to inherent characteristics that distinguish the class, the Court finds the classification does not violate Article 1, Section 23[.]

*Id.* at 27–28 (Conclusions 82 & 83) (emphasis added). As for the second prong of the Privileges and Immunities clause, which requires that preferential treatment be uniformly applicable and equally available to all persons similarly situated, the court found:

> [This requirement] is not a demand that a legislative classification be perfectly narrowly tailored to vindicate the government's purpose. A classification having *some reasonable basis* is not to be denied merely because it is not framed with such mathematical certainty as to include all within the reason of the classification and to exclude all others.

*Id.* at 28 (Conclusion 84) (emphasis added). Accordingly, the court found no violation of Article 1, Section 23.

Using the trial court's language, Appellants contend that the same "demonstrated intentional violent deadly behavior toward another person" could result in charges of battery,[11] aggravated battery,[12] criminal recklessness,[13] attempted murder,[14] or attempted manslaughter,[15] depending on the

**11.** Ind.Code § 35–42–2–1 ("A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery." The level of misdemeanor or felony for battery varies depending on the presence of bodily injury, serious bodily injury, or death, as well as the victim.).

**12.** Ind.Code § 35–42–2–1.5 ("A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes: (1) serious permanent disfigurement; (2) protracted loss or impairment of the function of a bodily member or organ; or (3) the loss of a fetus; commits aggravated battery, a Class B felony.").

**13.** Ind.Code § 35–42–2–2(b) ("A person who recklessly, knowingly, or intentionally performs: (1) an act that creates a substantial risk of bodily injury to another person; ... commits criminal recklessness." The level of misdemeanor or felony for criminal reckless-

ness varies based upon where and how the act is committed as well as what, if any, injury results.).

**14.** Ind.Code § 35–42–1–1(1) and –1(4) (defining murder as knowingly or intentionally killing another human being or fetus that has attained viability); Ind.Code § 35–41–5–1(a) ("A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a Class A felony.").

**15.** Ind.Code § 35–42–1–3(a) ("A person who knowingly or intentionally: (1) kills another human being; or (2) kills a fetus that has attained viability ... while acting under sud-

prosecutor's discretion. Since only a conviction for the latter two offenses would trigger the requirements of the Registry, Appellants claim disparate treatment.

 We briefly point out that the Registry is concerned only with convictions, not charges. Charging decisions are based upon the *likelihood* that proof may be shown rather than the actual proof eventually presented. The more intriguing question raised by Appellants is why certain offenses resulting in death fall within the Registry's ambit yet others do not. Presuming that the Registry statute is valid and resolving all reasonable doubts in favor of its constitutionality, as we must, we believe the trial court was correct in its resolution of the matter. That is, those who commit lesser crimes that happen to result in death have not demonstrated the *intentional violent deadly behavior toward another person* that would require compliance with the Registry.[16]

For example, one who commits battery resulting in death of a person less than fourteen by someone at least eighteen, or who commits battery resulting in death of an endangered adult, has not demonstrated intentional violent deadly behavior. Instead, such a person has merely touched someone in a rude, insolent, or angry manner, and the result of the touching has been death. *See* Ind.Code § 35–42–2–1(a)(5), (7). Having not demonstrated intentional violent deadly behavior, such persons are not *arbitrarily* exempted from the Registry's requirements. Similarly, one who violates Indiana Code Section 9–

30–5–5 has clearly caused the death of someone. However, the death is the result of the offender operating a motor vehicle while under the influence of alcohol or drugs; this is not the same as demonstrated intentional violent deadly behavior. Thus, the Legislature's decision not to subject this type of offense to the Registry's requirements is reasonable.

We examine a few other offenses that on the surface would seem to require registration yet have not been included with murder, voluntary manslaughter, etc. For instance, one who commits neglect of a dependent causing death has certainly caused a death. However, a conviction for this offense does not require proof of *intentional* violent deadly behavior; mere reckless conduct is sufficient. *See* Ind. Code § 35–46–1–4(b)(3). Thus, the Legislature's decision not to require registration for this offense is not arbitrary. Similarly, the elements of causing suicide and assisting suicide can be established without showing that the *defendant* demonstrated intentional deadly *behavior* toward another person. *See* Ind.Code §§ 35–42–1–2, –2.5. Rather, in both of these crimes, the victim performs the deadly action. Thus, while causing suicide and assisting suicide are obviously serious crimes, they may be rationally distinguished from those violent offenses requiring Registry compliance.

Turning to feticide, it does not trigger Registry requirements because conviction can occur without showing that the offender demonstrated intentional deadly behavior toward another *person;* instead the

---

den heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon."); Ind.Code § 35–41–5–1 (attempt statute; see footnote *supra* ).

**16.** Conversely, regardless of the fact that a victim of attempted murder or attempted manslaughter does not die, the defendant has

clearly demonstrated the same intentional violent deadly behavior toward another person that one convicted of murder or manslaughter has demonstrated. Thus, it easily follows that one convicted of attempted murder or attempted manslaughter must comply with the Registry.

knowing or intentional action is directed toward ending a pregnancy—regardless of viability. *See* Ind.Code § 35–42–1–6 ("A person who knowingly or intentionally terminates a human pregnancy with an intention other than to produce a live birth or to remove a dead fetus commits feticide, a Class C felony."). In contrast, murder of a fetus, which does require Registry compliance, may be proved only if the fetus "has attained viability." [17] *See* Ind.Code § 35–42–1–1(4). The distinction between feticide and murder of a fetus for purposes of the Registry is consistent with the Legislature's decision to assign a much greater punishment for the latter crime.

Contrary to Appellants' view, there are sufficient inherent differences between murder, voluntary manslaughter, and attempts to commit those crimes, as compared with the other listed offenses resulting in death, to permit the General Assembly to specify different treatment. To reach a different conclusion would be to substitute our beliefs as to the wisdom of these statutes for those of the legislators; we are not at liberty to do so. *See King,* 837 N.E.2d at 971. Further, even if we believed the amended Registry was born of unwise or ineffectual policies, such belief would not make the Registry unconstitutional. *See State v. Rendleman,* 603 N.E.2d at 1334.

Having reached the above conclusion, we separately address felony murder under the Registry. Indiana's murder statute encompasses not only those who knowingly or intentionally kill another person, but also those who kill a person while committing or attempting to commit offenses such as arson, burglary, child molesting, consumer product tampering, criminal deviate conduct, kidnapping, rape, robbery, human trafficking, promotion of human trafficking, sexual trafficking of a minor, carjacking, or dealing in certain narcotics and controlled substances. *See* Ind.Code § 35–42–1–1(1) through –(3). In proving felony murder, the State need not prove that the defendant acted with any particular mental state—the killing could be entirely accidental—so long as the State proves that the killing occurred while the defendant was committing or attempting to commit one of the enumerated felonies. *See Thomas v. State,* 827 N.E.2d 1131, 1133 (Ind.2005). Yet, a conviction for felony murder (because it is a type of murder) triggers the Registry's registration requirements.

At first blush, it seems incongruent to treat a felony murder the same as a typical knowing or intentional killing for purposes of the Registry and its attendant requirements. However, while a felony murder does not require the specific intent to kill, one who commits felony murder has "demonstrated intentional violent deadly behavior towards another person." Indeed, the Legislature has chosen to list certain crimes in the felony murder statute precisely because a person who commits such a crime is expected to know that the underlying felony is associated with a high risk of death to another. *See, e.g., Palmer v. State,* 704 N.E.2d 124, 125 (Ind.1999) (discussing how the conduct that constituted kidnapping "clearly raised the foreseeable possibility that the intended victim might resist or that law enforcement would respond, and thereby created a risk of death to persons present"); *Head v. State,* 443 N.E.2d 44, 50 (Ind.1982) (noting the rationale that underlies the felony-murder rule, "the recognition that the crimes carry

---

**17.** Ind.Code § 35–42–1–1(4) (defining murder as "knowingly or intentionally kill[ing] a fetus that has attained viability").

the inherent risk of bodily harm."). Therefore, the classification is rational.

In summary,

> Because Murder and Voluntary Manslaughter, along with attempts and conspiracies to commit those crimes, involve *voluntary and intentional acts by persons either designed to take the life of another person or very intentional and voluntary acts to commit certain serious felonies where commission of the crimes might reasonably cause the death of another person,* the General Assembly was within its authority consistent with Article 1, Section 23 of the Indiana Constitution to determine that persons who have committed Murder and Voluntary Manslaughter represent a greater, continuing threat to society than persons who committed other crimes resulting death, so that their inclusion on the [R]egistry was warranted. Thus, contrary to [Appellants'] claims, there are inherent differences that make expedient different or exclusive treatment of persons who have committed crimes resulting in deaths.

Appellees' Br. at 16 (emphasis added).

To the extent that any additional offenses might seem to fit within the group of those requiring Registry compliance, yet are not currently included, such offenses are "isolated" or "insubstantial" examples of non-uniformity. *See Dvorak v. City of Bloomington,* 796 N.E.2d 236, 240 (Ind.2003) (concluding that Bloomington's ordinance regarding unrelated persons living in a house does not violate the Privileges and Immunities Clause despite the fact that some houses are "grandfathered"); *see also* App. at 28 (Conclusion 84, discussing how the classification needs some reasonable basis, yet need not be framed with complete "mathematical certainty"). Further, it would be up to the Legislature to decide whether other offenses might be added at some point to the current list.

## II. Article 1, Section 12

 Citing Article 1, Section 12, Appellants question whether the goals of the Registry are rationally related to the statutes requiring violent offenders to comply with the Registry. Appellants contend that in upholding registry laws concerning sex offenders, courts have cited studies that indicate that sex offenders have high rates of recidivism, and therefore, registries are rational methods to aid law enforcement in preventing recidivism/protecting society from future sex offenses. In contrast, the recidivism rationale does not work with violent offenders, claim Appellants.

For support, Appellants submitted the affidavit of Thomas Stucky, Ph.D., an assistant professor at the School of Public and Environmental Affairs at Indiana University Purdue University Indianapolis, whose expertise includes criminology, criminal justice, and political sociology. According to Dr. Stucky's summary of relevant studies, "the rate of a person convicted of murder or manslaughter committing the same category of offense again is the lowest of all criminal offenders and is extremely low," although there is some recidivism rate. App. at 76–77. Dr. Stucky further noted that if a violent offender does not re-offend within five years after release, the probability of the person engaging in any criminal activity "nearly approximates" that of the general population. *Id.* at 79 (affidavit of Dr. Stucky, noting what we shall refer to as "the Five-Year Statistic").

Relying on Dr. Stucky's synthesis of the studies on violent offenders, Appellants argue that it is not rational to require compliance with the Registry when it does not serve the statutory purpose of protecting society against former violent offenders.

Appellants assert that the Registry could actually hurt society by lulling it into a false sense of security and could eliminate opportunities for former offenders to become productive members of society thereby increasing the likelihood that they would re-offend. Appellants reiterate the finding that twice as many offenders released for *property* offenses than violent offenders were arrested for homicide within three years of their release. *Id.* at 77.

Article 1, Section 12, of the Indiana Constitution states: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law," and "[j]ustice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." Our supreme court has recognized that Article 1, Section 12 contains a substantive component requiring legislative enactments to be rationally related to a legitimate legislative goal. *See McIntosh v. Melroe Co.,* 729 N.E.2d 972, 979 (Ind.2000). Stated somewhat differently from a rights perspective, Article 1, Section 12, recognizes that individuals have a right to be free from arbitrary government treatment. *See Prior v. GTE North Inc.,* 681 N.E.2d 768, 775 (Ind.Ct. App.1997), *trans. denied.* This inquiry is similar to a rational basis review under federal substantive due process analysis. *McIntosh,* 729 N.E.2d at 976, 979–80.

Regarding this issue, the trial court found:

> 67. The sex offender registration statutes are upheld as rational because they are designed to "protect [ ] the public from recidivist sex offenders." . . .

68. Protecting citizens and residents of the State of Indiana from becoming victims of violent crime by a person who has previously been convicted of murder, attempted murder, manslaughter or attempted manslaughter is a legitimate state interest.

69. Providing citizens and residents of the State of Indiana access to truthful and accurate information, with such information collected in one place on the internet about the identification and location of persons convicted of murder, attempted murder, voluntary manslaughter and attempted voluntary manslaughter is a rational way of affecting the legitimate state interest in so protecting citizens and residents of the State of Indiana.

App. at 23–24. Recalling the prohibition on a court substituting its judgment for the Legislature's and noting the Five–Year Statistic, the trial court then found a rational relationship between registration (at least for some amount of time) and the legitimate state interest of enhancing public protection and imparting a sense of security. *Id.* (Conclusions 70, 71). These conclusions would seem to lead to a finding of no violation of Article 1, Section 12.

Appellees echo the trial court's findings and conclusions that support a finding of no violation of Section 12, stress that Dr. Stucky's is just one opinion,[18] and rely on *Marlett v. State,* 878 N.E.2d 860, 869 (Ind. Ct.App.2008), *trans. denied.* In *Marlett,* we held that the Registry was not unconstitutional as applied to a defendant who committed the equivalent of criminal confinement of a minor. We explained:

> [A] number of courts from other jurisdictions have addressed whether it violates substantive due process to require

---

**18.** As we discuss in Issue IV *infra,* Appellees also advocate a closer reading of Dr. Stucky's opinion.

a person to be placed on an offender registry for committing the equivalent of criminal confinement of a minor, which is the gist of Marlett's claim. In order to conform with substantive due process, a law that does not impact a fundamental right must only bear a rational relationship to a legitimate state interest. *See Mitchell v. State,* 659 N.E.2d 112, 116 (Ind.1995). Almost all courts that have addressed registration issues have found no fundamental right that is impacted by an offender registry. *See, e.g., People v. Cintron,* 13 Misc.3d 833, 827 N.Y.S.2d 445, 452 (N.Y.Sup.Ct.2006). Thus, they have reviewed substantive due process claims regarding offender registries under the rational relationship test. *See id.* at 453. Several courts have found requiring a defendant to be placed on an offender registry for committing the equivalent of criminal confinement of a minor to meet this rationality test. *See, e.g., id.* at 460; *In re Phillip C.,* 364 Ill.App.3d 822, 301 Ill. Dec. 791, 847 N.E.2d 801, 808 (2006), *appeal denied.* Marlett has not persuaded us to reject these holdings, particularly in light of the fact that Indiana's Registry now includes "violent" as well as "sex" offenses.

*Id.* at 869 (also citing *Spencer v. O'Connor,* 707 N.E.2d 1039, 1046 (Ind.Ct.App.1999), *trans. denied,* for conclusion that modification of the Registry after the date of Marlett's conviction and sentencing would not violate federal and state constitutional prohibitions against ex post facto laws).

Considering our deference to legislative policies (regardless of our position as to the policies), the fact that there is some

(albeit slight) recidivism among violent offenders at least for some time after release, and that community notification about violent offenders provides an opportunity for enhancing public safety (legitimate state interest), the requirement that violent offenders register for at least some [19] amount of time meets the low threshold of rational relation. Thus, we see no violation of Article 1, Section 12.[20]

### III. Preliminary Injunction Requirements

Appellants argue that the requirements for a preliminary injunction were met. They maintain that constitutional violations constitute irreparable harm as a matter of law. Appellants' Br. at 35 (citing *Cohen v. Coahoma County, Miss.,* 805 F.Supp. 398, 406 (N.D.Miss.1992), which concerned violation of U.S. Constitution). They also rely upon *Doe v. O'Connor,* 781 N.E.2d 672, 674 (Ind.2003), to support their irreparable harm argument as well as to assert that the balance of harms favors them. In *Doe,* our supreme court granted an injunction pending appeal of an ultimately unsuccessful challenge to the portions of the Registry providing for publication of sex offenders' home addresses and photographs on the internet. *See also Doe v. O'Connor,* 790 N.E.2d 985 (Ind.2003). Finally, Appellants contend that it is in the public's interest to prevent violations of constitutional rights.

Consistent with their position that no constitutional violation has been demonstrated, Appellees dispute the likelihood of success and the irreparable harm allegation. Additionally, they contend that law enforcement and the public would be harmed if the information were removed

---

**19.** We address the length of the time period for compliance with the Registry *infra.*

**20.** Further, perhaps the fact that twice as many offenders released for property offenses than violent offenders were arrested for homi-

cide within three years of their release simply implies that the Legislature might consider expanding the Registry's net to capture additional offenses.

from the Registry. Appellees also claim, "there would be a cost to removing names from the Registry and re-registering persons if required," and thus a bond should be required, although they do not suggest any amount. Appellees' Br. at 27.

In reply, Appellants note that no bond was required for the preliminary injunction that the court granted to the subclass of violent offenders who would be required to register for life. Following oral argument, Appellants provided additional authority for the proposition that the bond requirement can be waived or set at zero dollars. *See Kennedy v. Kennedy*, 616 N.E.2d 39, 43–44 (Ind.Ct.App.1993), *trans. denied; Jorgensen v. Cassiday*, 320 F.3d 906, 919–20 (9th Cir.2003). Appellants also posit that any costs would be low and contend that any bond amount should be nominal, at most. Appellees, in their reply, do not further discuss the bond issue.

The court in the present case found:

In granting an injunction pending appeal in the ultimately unsuccessful challenge to registry requirements that home addresses and photographs be published, *Doe v. O'Connor*, 781 N.E.2d 672 (Ind. 2003), the Indiana Supreme Court specifically found that incorrect publication of registry information would cause irreparable harm inasmuch as "[I]f these materials are published on the internet, it may be impossible to contain their distribution." *Id.* at 674. Therefore, the challenged laws cause, and threaten to cause, injury to former offenders who would be required to register for life.

*Id.* at 25 (Conclusion 73). Thus, the trial court basically used *Doe*'s analysis to justify the preliminary injunction regarding lifetime registration. However, the court did not grant a preliminary injunction with regard to the ten-year Registration time period.

We reiterate the four requirements that must be proven by a preponderance in order to justify a preliminary injunction: (1) a reasonable likelihood of success at trial; (2) irreparable harm/the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. *See Cent. Ind. Podiatry*, 882 N.E.2d at 727; *Doe*, 781 N.E.2d at 674.

The preliminary injunction analysis in the present case hinges strongly on the first prong, which leads back to an analysis of the constitutional challenges. That is, if Appellants have a reasonable likelihood of success at trial with their constitutional challenges to the amended Registry, then it easily follows that the legal remedies are inadequate/irreparable harm occurs, the potential harm to Appellants outweighs the harm to Appellees, and the public interest would not be disserved by a preliminary injunction—particularly in light of *Doe v. O'Connor*. Given that we have not found a constitutional problem, Appellants' preliminary injunction argument fails on the first prong, likelihood of success on the merits. Again, if the movant fails to prove even one of the prongs, the injunction cannot be granted. *Planned Parenthood of Ind. v. Carter*, 854 N.E.2d 853, 863 (Ind.Ct.App. 2006). Therefore, we cannot say the court abused its discretion to the extent it denied Appellants' request for a preliminary injunction.

### IV. Cross–Appeal, Ten–Year Limit

In their cross-appeal, Appellees assert that as a matter of law, the trial court erred in enjoining Appellees from requiring lifetime registration for violent offenders, thereby implicitly limiting the registration period to ten years. They assert that the plain language of Indiana Code

Section 11–8–8–19 consistently requires lifetime registration by some but not all violent offenders. Appellees claim that it was reasonable for the General Assembly to determine that some violent offenders are at risk to re-offend for the remainder of their lives, and thus, the lifetime registration requirement is rationally related to the permissible state interests.

In challenging the partial preliminary injunction, Appellees take issue with the court's rewording of Dr. Stucky's Five-Year Statistic. App. at 24 (Conclusion 70). That is, Dr. Stucky did not say that, "there is simply no greater likelihood that a former offender will commit a crime after five years post supervision than the general population." *Id.* He said that if the former offender "does not reoffend within 5 years after release, the probability of the person engaging in any criminal activity (let alone homicide) *nearly approximates* the general population." App. at 79 (Dr. Stucky's affidavit; *emphasis added*). According to Appellees, given that there is a difference, admittedly slight, between the probabilities, and in light of the court's own conclusion that "there is a rational relationship between registration and legitimate state interest, specifically protecting the public and imparting a sense of security," the lifetime portion of the Registry has a substantial relationship to permissible state objectives. App. at 24 (Conclusion 71). Thus, Appellees argue, the trial court had no substantive due process basis on which to question the wisdom of the Legislature on this issue.

Appellees' argument is compelling. Indeed, despite its ultimate decision enjoining Appellees from using Indiana Code Section 11–8–8–19(d) to require lifetime registration for violent offenders, the trial court never *explicitly* found a constitutional violation in the lifetime registration requirement for violent offenders. Instead, the court concluded that its interpretation/paraphrasing of the Five–Year Statistic

> brings into serious question whether there is a rational relationship between the statute's requirement for lifetime registration and a legitimate state interest. If we accept public registration for a group of individuals who have no greater likelihood of offending than the general public does, one must wonder where the line will be drawn. There is no evidence that there is a rational relationship between lifetime registration for violent offenders and a legitimate state interest.

*Id.* at 25 (Conclusion 72). After closely reading Dr. Stucky's affidavit, we cannot say there is "no evidence" of relationship between lifetime registration for violent offenders and a legitimate state interest. Thus, we cannot agree with the above conclusion. However, that is not the end of the story.

The trial court also made the following conclusion:

> The language of [Ind.Code § 11–8–8–19(d) ] is illogical if applied to a non-sex offender. The language initially purports to apply to both violent offenders and sex offenders but then limits its application to sex offenders. Additionally, it would be redundant to state that violent offenders need only register for ten (10) years, if any offender who caused serious bodily injury or death, or used force or threat of force, must register for life. It is hard to imagine when a violent offender has not caused *at least* serious bodily injury or threatened force in the commission of a murder, manslaughter, or an attempt to commit either crime. The intent of the General Assembly must have been that the lifetime registration required by Indiana

Code § 11–8–8–19(d) apply to sex offenders and not to violent offenders.

*Id.* at 25–26 (Conclusion 75). This alternative rationale for disallowing lifetime registration requires that we perform a statutory analysis.

■■■■■ When examining a statutory provision, we analyze the statute as a whole and give the words of the statute their common and ordinary meanings, absent a clearly manifested purpose to do otherwise. *See Mendenhall v. Skinner & Broadbent Co.*, 728 N.E.2d 140, 142 (Ind. 2000). An unambiguous statute need not be construed. *Rheem Manuf. Co. v. Phelps Heating & Air Cond.*, 746 N.E.2d 941, 947 (Ind.2001). We presume the Legislature does not enact useless statutes or statutory provisions and intends to avoid unjust or absurd results. *Hall Drive Ins. Inc. v. City of Fort Wayne*, 773 N.E.2d 255, 257 (Ind.2002); *State v. Evans*, 810 N.E.2d 335, 337 (Ind.2004). Statutes are to be applied in a logical manner consistent with public policy and convenience with each section being considered with reference to all other sections. *Alberici Constructors, Inc. v. Ohio Farmers Ins. Co.*, 866 N.E.2d 740, 743 (Ind.2007).

■■■■ Regardless of whether Appellees admit it, Indiana Code Section 11–8–8–19(d), excerpted below, is problematic.

> (d) A *sex or violent offender* who is convicted of at least one (1) offense under section 5(a) of this chapter in which the *sex offender:*
>
> (1) proximately caused serious bodily injury or death to the victim;
>
> (2) used force or the threat of force against the victim or a member of the victim's family, unless the offense is sexual battery as a Class D felony; or
>
> (3) rendered the victim unconscious or otherwise incapable of giving voluntary consent;
>
> is required to register for life.

(Emphases added). While it initially refers to a "sex or violent offender," Subsection (d) then refers only to a "sex offender." This is different than Subsections (b), (c), and (e) of Indiana Code Section 11–8–8–19, which refer to "sex or violent offender" throughout. There are two possible explanations/ways to interpret this discrepancy. One, the reference to "sex offender" should be read to mean "sex or violent offender," and the fact that it does not was simply an oversight that occurred when the Registry was amended to add violent offenders. Two, the reference to "sex or violent offender" is a mistake, which really should read "sex offender." Again, perhaps this occurred when violent offenders were added to the Registry. *See* P.L. 216–2007, § 52.

If the first interpretation is correct, then it does raise the question of how often someone convicted of murder, voluntary manslaughter, attempted murder, or attempted manslaughter would *not* also fall within one of the three subparts of Subsection (d). It is quite likely that the vast majority of violent offenders, even if they did not fit within Subsections (b), (c), or (e), would be required to register for life because they proximately caused serious bodily injury or death to the victim, used force or the threat of force against the victim or a member of the victim's family, or rendered the victim unconscious or otherwise incapable of giving voluntary consent under Subsection (d). Indeed, in the case of violent offenders, Subsection (d)'s lifetime registration would seem to swallow Subsection (a)'s general rule of ten-year registration.

If the second interpretation is correct, then Indiana Code Section 11–8–8–19(d) would only apply to sex offenders. Further, violent offenders would be subject to lifetime registration *only if* they also fell within Subsections (b) (also a sexually violent predator), (c) (committed at least one offense under section 5(a) when the offend-

er was at least eighteen and the victim was less than twelve), or (e) (committed at least two unrelated offenses under section 5(a)). Presumably, this reading would substantially reduce the number of violent offenders required to register for a lifetime. Indeed, Wade and the subclass that she represents would not be subject to lifetime registration.

This second interpretation, which would apply Indiana Code Section 11–8–8–19(d) only to sex offenders, makes sense when one considers that the subparts of Indiana Code Section 11–8–8–19(d) track language from sex offense statutes. Specifically, Subsection (d)(1) references serious bodily injury, which would elevate a standard sex offense to a higher level felony. Similarly, Subsection (d)(2) references force or the threat of force, again, another circumstance that would elevate a standard sex offense to a higher level. *See, e.g.,* Ind. Code § 35–42–4–1(b) (noting rape rises to an A felony if committed by "using or threatening the use of deadly force" or if it results in "serious bodily injury"); Ind. Code § 35–42–4–2 (noting same with regard to criminal deviate conduct); Ind. Code § 35–42–4–3 (noting same regarding child molesting). In contrast, murder and voluntary manslaughter do not contain options to increase penalties if serious bodily injury and/or force or threat of force are shown. *See* Ind.Code § 35–42–1–1 (defining murder as knowingly or intentionally killing another human being); Ind.Code § 35–42–1–3 (defining voluntary manslaughter as knowingly or intentionally killing another human being or viable fetus while acting under sudden heat). Serious bodily injury and force/threat of force simply are not issues in the context of murder and voluntary manslaughter. Further support for construing Subsection (d) as applying only to sex offenders, rather than to violent offenders too, is found in Indiana Code Section 11–8–8–19(d)(3)'s "incapable of giving voluntary consent" reference.

While consent is a key component in sex offenses, it is a non-issue for purposes of murder or voluntary manslaughter.

As should be clear from the above discussion, this second interpretation of Indiana Code Section 11–8–8–19(d) is neither absurd nor inconsistent with the statute's goal of informing the public. To the contrary, applying Indiana Code Section 11–8–8–19(d) only to sex offenders is the more logical reading of the statute. Accordingly, we clarify that a violent offender is required to comply with the Registry for ten years, unless he/she also falls within Subsections (b), (c), or (e) of Indiana Code Section 11–8–8–19, in which case lifetime registration *is* warranted. Therefore, we conclude that the court's preliminary injunction should apply only to members of the subclass represented by Wade. Such members are violent offenders who are or will be more than ten years removed from the later of the date they were released from prison, placed on parole or probation, or placed in a community corrections, *and* who are not sexually violent predators, were not convicted of an offense while over the age of eighteen against a victim less than twelve, and have not been convicted of two or more unrelated offenses under Indiana Code Section 11–8–8–5(a). To the extent that the trial court's order would grant a preliminary injunction against lifetime registration for *all* violent offenders, we reverse and remand with instructions to clarify the preliminary injunction consistent with this opinion. In all other respects, we affirm the trial court.

Affirmed in part and reversed in part with instructions.

DARDEN, J., and MATHIAS, J., concur.